IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:

THE HILLS AT OAK RUN HOMEOWNER
ASSOCIATION,

      Plaintiff,

v.

AMGUARD INSURANCE COMPANY,

      Defendant.

---

## COMPLAINT AND JURY DEMAND

---

**COMES NOW** Plaintiff, The Hills at Oak Run Homeowner Association, by and through its undersigned counsel, and hereby submit this its Complaint against Defendant, AmGuard Insurance Company, and in support of its Complaint, alleges and avers as follows:

## NATURE OF THE ACTION

1.    Plaintiff brings this action seeking economic and non-economic damages arising from Defendant's bad faith conduct, unreasonable delay and denial, and failure to pay in full covered benefits due and owing under Plaintiff's first-party insurance contract.

## PARTIES

2.    Plaintiff, The Hills at Oak Run Homeowner Association (hereinafter "Plaintiff" or "Oak Run") is a Colorado nonprofit corporation with its principal office in Lakewood, Colorado.

3.    Plaintiff is the duly organized homeowner's association for the development known as Hills at Oak Run located at 5640 – 5658 W. Center Avenue, Lakewood, Colorado 80226, and 607 – 779 South Depew Street, Lakewood, Colorado 80226 (herein after the "Property").

4.      Defendant, AmGuard Insurance Company (hereinafter "Defendant" or "AmGuard"), is a foreign insurance company incorporated and domiciled in the state of Pennsylvania and maintains its principal place of business in a state other than in Colorado.

## JURISDICTION AND VENUE

5.      This court has jurisdiction and venue is proper pursuant to 28 U.S.C. §§ 1332(a) and 1441. There is complete diversity among the parties and the amount in controversy is in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs. The property which is the subject of the claim and the adjustment of the claim occurred in Colorado.

## FACTS COMMON TO ALL COUNTS

8.      The Oak Run Property includes twenty-three (23) individual residential condominium buildings.

9.      Each of the roofing systems of the twenty-three (23) individual residential condominium buildings are with laminated shingles mechanically attached to the decking.

10.      Each of the exteriors of the twenty-three (23) individual residential condominium buildings are clad with painted siding and wood trim including a brick veneer along the front elevation.

11.      The shingle roofing systems covering the Property were installed in October 2011.

12.      Oak Run purchased a Businessowner's Policy of insurance from AmGuard under Policy Number HIBP832286 (the "Policy").

13.      The Policy provides $22,983,700.00 in property damage coverage for the Property.

14.     The Policy was issued with effective dates of March 15, 2017 through March 15, 2018. A true and accurate copy of the Policy is attached hereto as **Exhibit A.**

15.     The Policy is an all risk policy of insurance.

16.     The Policy is a replacement cost value policy and covers loss to Oak Run's Property.

17.     The Policy provides coverage for direct physical loss of or damage to covered property at the premises caused by or resulting from any covered cause of loss.

18.     The Policy provides coverage for cosmetic damage to the Property resulting from hail or wind.

19.     The Policy provides for the repair, rebuild or replacement of the damaged property with other property of like kind and quality.

20.     The Policy does not require that the Property sustain functional damage for coverage to be afforded to direct physical loss of or damage to covered property at the premises caused by or resulting from any covered cause of loss.

21.     The Policy does not include a cosmetic exclusion or cosmetic endorsement.

22.     The Policy provides coverage for the reasonable uniform appearance between the repair, rebuild or replacement of the damaged property and the materials existing on the Property.

23.     Under the Policy, AmGuard agreed to adjust all losses with its insured fairly and timely.

24. Oak Run paid the premiums due under the Policy in a timely manner, and performed all duties and responsibilities required of it under the Policy.

25. On or about May 8, 2017, during the Policy period, Oak Run suffered a loss at the insured Property due to hail and/or wind.

26. The hail and/or wind storm produced golf ball size hail at the Oak Run Property. *See* **Exhibit B**, Photograph of Hail at the Property.

27. The direct physical loss and/or damage resulting from the hail and/or wind constituted a covered loss under the Policy.

28. The direct physical loss and/or damage resulting from the hail and/or wind resulted in damage to the Property.

29. The direct physical loss and/or damage resulting from the hail and/or wind resulted in functional damage to the Property.

30. The direct physical loss and/or damage resulting from the hail and/or wind prevented the roofing system covering the Property from continuing to function as a barrier to entrance of the elements to the same extent as it did before the hail damage occurred.

31. The direct physical loss and/or damage resulting from the hail and/or wind has diminished the long-term service life of the roofing system covering the Property.

32. The direct physical loss and/or damage resulting from the hail and/or wind resulted in damage to the siding covering the exterior of the Property.

33.     The direct physical loss and/or damage resulting from the hail and/or wind resulted in damage to the windows at the Property.

34.     The direct physical loss and/or damage resulting from the hail and/or wind was promptly reported to AmGuard.

35.     AmGuard assigned Claim Number HIBP832286-001-001-001 to the Property loss (the "Claim").

36.     Following the devastating storm, Oak Run actively sought out contractors to provide estimates for the covered loss to the Property, eventually engaging Colorado licensed general contractor, Dynamic Roofing & Construction, Inc. (hereinafter "Dynamic"), to inspect the direct physical loss and/or damages resulting from the hail and/or wind storm that occurred on or about May 8, 2017.

37.     AmGuard assigned a claim adjuster, Robert Cartagena, to investigate and adjust Oak Run's claim for direct physical loss and/or damage to the Property resulting from the hail and/or wind storm that occurred on or about May 8, 2017.

38.     AmGuard retained an independent adjusting firm, Engle Martin & Associates, Inc. (hereinafter "Engle Martin"), to assist with the investigation and adjustment of the Claim.

39.     On or about August 1, 2017, AmGuard's representative, Engle Martin, completed its inspection of the Property.

40.     During its August 1, 2017 inspection of the Property, AmGuard's representative, Engle Martin, discovered hail damages to the Property resulting from the hail and/or wind storm that occurred on or about May 8, 2017.

41.     During the August 1, 2017 inspection of the Property, AmGuard's representative, Engle Martin, and Oak Run's contractor, Dynamic, agreed to the scope of loss to the Property.

42.     On August 11, 2017, AmGuard's representative, Engle Martin, confirmed that the removal of the existing drip edge would require the removal and resetting or replacement of the gutters.

43.     On or about September 22, 2017, AmGuard's representative, Engle Martin, advised Oak Run that it would have sufficient information the following week to move the claim along.

44.     On October 4, 2017, AmGuard's representative, Engle Martin, advised Oak Run that it had provided a report to AmGuard and expected to hear back in the next several days.

45.     On October 10, 2017, AmGuard's representative, Engle Martin, advised Oak Run that it had been requested to terminate its investigation regarding the direct physical loss of and/or damages to the Property resulting from the hail and/or wind storm that occurred on or about May 8, 2017.

46.     On or about October 13, 2016, Oak Run requested AmGuard provide an update on its claim for direct physical loss of and/or damages to the Property resulting from the hail and/or wind storm that occurred on or about May 8, 2017.

47.    On or about October 13, 2017, AmGuard provided Oak Run with its first damage estimate which outlined $69,717.54 in replacement cost value covered damages ("AmGuard First Damage Estimate"). *See* **Exhibit C**, AmGuard First Damage Estimate.

48.    AmGuard's First Damage Estimate included only fifty-eight line items. *See* **Exhibit C**, AmGuard First Damage Estimate.

49.    AmGuard's First Damage Estimate failed to include covered direct physical loss and/or damage to the roofing systems covering the Property. *See* **Exhibit C**, AmGuard First Damage Estimate.

50.    AmGuard's First Damage Estimate failed to include covered direct physical loss and/or damage to the siding covering the exterior of the Property. *See* **Exhibit C**, AmGuard First Damage Estimate.

51.    AmGuard's First Damage Estimate failed to include covered direct physical loss and/or damage to all of the damaged windows at the Property. *See* **Exhibit C**, AmGuard First Damage Estimate.

52.    AmGuard's First Damage Estimate failed to include any photographs or test square documentation supporting the conclusions contained therein. *See* **Exhibit C**, AmGuard First Damage Estimate.

53.    AmGuard's First Damage Estimate failed to include the written report drafted by Engle Martin. *See* **Exhibit C**, AmGuard First Damage Estimate.

54.     AmGuard's First Damage Estimate failed to provide for the repair, rebuild or replacement of the damaged property with other property of like kind and quality. *See* **Exhibit C**, AmGuard First Damage Estimate.

55.     On or about October 25, 2017, AmGuard retained Rimkus Consulting Group, Inc. (hereinafter "Rimkus Consulting"), an outcome-oriented engineering firm based in Texas.

56.     On or about October 25, 2017, Rimkus Consulting performed its first site inspection of the Property.

57.     During its October 25, 2017 site inspection, Rimkus Consulting utilized a functional damage threshold for damages that does not exist within the Policy.

58.     During its October 25, 2017 site inspection, Rimkus Consulting inspected three of the twenty-three buildings at the Property.

59.     During its October 25, 2017 site inspection, Rimkus Consulting discovered hail damage on the west, south, and north slopes of the three roofing systems inspected.

60.     During its October 25, 2017 site inspections, Rimkus Consulting confirmed the presence of fractures on the roofing systems inspected.

61.     On or about October 26, 2017, Oak Run requested that AmGuard provide a copy of Engle Martin's report relating to Oak Run's claim for direct physical loss of and/or damages to the Property resulting from the hail and/or wind storm that occurred on or about May 8, 2017.

62.     On October 26, 2017, Oak Run requested AmGuard adjuster, Robert Cartagena, provide it with a copy of his reports related to his investigation of Oak Run's claim, including test square analysis and any photographs.

63.     On or about January 1, 2018, AmGuard reassigned Oak Run's claim to a new adjuster, Paul Prislupsky.

64.     As a result of AmGuard's poor investigation of its Insured's Claim, Oak Run retained Tremaine Enterprises, Inc. (hereinafter "TEI"), a Colorado licensed public adjusting firm, to assist in the adjustment of Oak Run's claim for direct physical loss of and damage to the Property resulting from the hail and wind storm occurring on or about May 8, 2017.

65.     On or about February 1, 2018, AmGuard retained an independent property adjusting firm, RGA Claims Management, Inc. (hereinafter "RGA"), to assist in the investigation and evaluation of Oak Run's claim for direct physical loss of and/or damages to the Property resulting from the hail and/or wind storm that occurred on or about May 8, 2017.

66.     On or about February 12, 2018, Oak Run's representative, TEI, requested that AmGuard provide a copy of all reports, scopes of repair, and repair estimates related to its investigation of damage to the Oak Run Property resulting from the wind and/or hail storm that occurred on or about May 8, 2017.

67.     On or about February 19, 2018, Oak Run's representative, TEI, provided RGA with photographs illustrating hail damage to all elevations of the buildings inspected by Rimkus Consulting.

68.     On or about February 19, 2018, Oak Run's representative, TEI, provided RGA with photographs illustrating golf ball plus size hail captured at the Property following the wind and/or hail storm that occurred on or about May 8, 2017. *See* **Exhibit B**, Photograph of Hail at the Property.

69.     On or about February 20, 2018, Oak Run's representative, TEI, for a second time, requested that RGA provide a copy of the report generated by Rimkus Consulting related to its inspection of the Oak Run Property.

70.     On or about February 21, 2018, RGA advised Oak Run that it had inspected the Property with Rimkus Consulting outside of the presence of Oak Run, however, it did not provide a copy of any reports generated by Rimkus Consulting related to the unilateral inspection of the Property.

71.     On or about February 21, 2018, Oak Run's representative, TEI, and RGA engaged in a telephone conference regarding Oak Run's claim for direct physical loss of and/or damages to the Property resulting from the hail and/or wind storm that occurred on or about May 8, 2017.

72.     On or about February 22, 2018, Oak Run's representative, TEI, sent RGA an e-mail memorializing its telephone conference with RGA regarding Oak Run's claim for direct physical

loss of and/or damages to the Property resulting from the hail and/or wind storm that occurred on or about May 8, 2017. *See* **Exhibit D**, TEI E-Mail Memorializing Telephone Conference.

73.     On or about February 22, 2018, Oak Run's representative, TEI, for a third time, requested a copy of the reported generated by Rimkus Consulting related to its inspections of the Oak Run Property. *See* **Exhibit D**, TEI E-Mail Memorializing Telephone Conference.

74.     On or about February 28, 2018, Oak Run's representative, TEI, for a fourth time, requested a copy of the reported generated by Rimkus Consulting related to its inspections of the Oak Run Property. E-Mail.

75.     On or about March 2, 2018, Oak Run's representative, TEI, for a fifth time, requested a copy of the reported generated by Rimkus Consulting related to its inspections of the Oak Run Property.

76.     On or about March 5, 2018, Oak Run's representative, TEI, for a sixth time, requested a copy of the reported generated by Rimkus Consulting related to its inspections of the Oak Run Property.

77.     On or about March 12, 2018, Oak Run's representative, TEI, for a seventh time, requested a copy of the reported generated by Rimkus Consulting related to its inspections of the Oak Run Property.

78.     On or about March 19, 2018, Oak Run's representative, TEI, for an eighth time, requested a copy of the reported generated by Rimkus Consulting related to its inspections of the Oak Run Property.

79.     On or about March 21, 2018, Oak Run's representative, TEI, for a ninth time, requested a copy of the reported generated by Rimkus Consulting related to its inspections of the Oak Run Property.

80.     On March 21, 2018, after nine requests, AmGuard's representative, RGA, advised Oak Run that aside from the conclusions of its engineer, it would not share any reports produced by any of its retained experts.

81.     On March 22, 2018, AmGuard's representative, RGA, provided Oak Run with Rimkus Consulting's purported conclusions related to its inspections of the Oak Run Property, which provided:

> Based on the research, physical evidence, and information provided, Rimkus concluded that hailstone impacts from the Storm, and up to six hailstorm events prior to the Storm dating back to July 20, 2009, caused the following functional damage to the roof coverings of the following five representative buildings and their respective roof slopes. The damage can be repaired:
>
> a)   5640-5646 West Center Avenue: seven shingles on the south slopes, five shingles on the west slopes, two shingles on the north slopes, and no damage to the east slopes.
>
> b)   5658-5650 West Center Avenue: six shingles on the south slopes, eight shingles on the west slopes, two shingles on the north slopes, and no damage to the east slopes.
>
> c)   619-631 South Depew Street: five shingles on the south slopes, ten shingles on the west slopes, and one shingle each on the north and east slopes.

d)   <u>774-778 South Depew Street</u>: *no damage to any roof slope.*

e)   <u>752-756 South Depew Street</u>: *four shingles on the west roof slopes, no damage to the east slopes. North and south slopes were not inspected due to rain.*

*See* **Exhibit E**, RGA E-Mail – March 22, 2018.

82.     While the Policy provides coverage for direct physical loss of or damage to covered property at the premises caused by or resulting from any covered cause of loss, the purported conclusions provided by Rimkus Consulting suggest that AmGuard instructed its consultant, Rimkus Consulting, to apply a functional damage threshold during its inspection of the roofing systems covering the Property.

83.     The purported conclusion provided by RGA suggest that AmGuard did not instruct its consultant, Rimkus Consulting, to inspect for direct physical loss of and/or damages to the Property resulting from hail or wind.

84.     The purported conclusion provided by RGA suggest that AmGuard did not instruct its consultant, Rimkus Consulting, to inspect the Property for cosmetic damage resulting from hail or wind.

85.     The purported conclusion provided by RGA suggest that AmGuard did not instruct its consultant, Rimkus Consulting, to inspect for direct physical loss of and/or damage to the siding covering the exterior of the Property.

86.     The purported conclusion provided by RGA suggest that AmGuard did not instruct its consultant, Rimkus Consulting, to inspect for direct physical loss of and/or damage to the windows at the Property.

87.     The purported conclusion provided by RGA suggest that AmGuard did not instruct its consultant, Rimkus Consulting, to inspect all of the direct physical loss of and/or damage resulting from hail and/or wind.

88.     While the purported conclusions reference dates of loss in 2009, AmGuard provided no evidence to support these conclusions.

89.     On or about March 28, 2018, Oak Run's representative, TEI, provided AmGuard with a copy of its damage estimate which outlined $2,909,158.71 in replacement cost value covered damages to the Oak Run Property resulting from the hail and/or wind storm that occurred on or about May 8, 2017 ("Oak Run Damage Estimate"). *See* **Exhibit F**, Oak Run Damage Estimate.

90.     On or about March 28, 2018, Oak Run's representative, TEI, provided AmGuard with photographs illustrating direct physical direct physical loss of and/or damage to each of the twenty-three (23) roofing systems covering the Property.

91.     On or about March 28, 2018, Oak Run's representative, TEI, requested that AmGuard provide a copy of the underwriting file and corresponding photographs taken during the underwriting inspection illustrating the condition of the buildings.

92.     On or about April 27, 2018, Oak Run's representative, TEI, requested the status of AmGuard's response to Oak Run's Damage Estimate.

93.     On or about May 4, 2018, Oak Run provided AmGuard with an executed Partial Sworn Statement in Proof of Loss in the amount of $2,909,158.71. *See* **Exhibit G**, Oak Run Proof of Loss.

94.     On or about May 24, 2018, AmGuard issued correspondence rejecting its insured's Partial Sworn Statement in Proof of Loss.

95.     On or about May 25, 2018, Oak Run's representative, TEI, requested AmGuard identify language within the Policy requiring that the Property sustain functional damage for coverage to be afforded. *See* **Exhibit H**, TEI Correspondence – May 22, 2018.

96.     To date, AmGuard has failed to provide its Insured with the entirety of the Rimkus Consulting report that supports the purported conclusions provided above.

97.     To date, AmGuard has failed to identify language within the Policy requiring that the Property sustain functional damage for coverage to be afforded.

98.     To date, AmGuard has failed to provide its insured with a copy of the inspection report generated by Rimkus Consulting.

99.     To date, AmGuard has failed to provide its insured with photographs taken by Rimkus Consulting during its inspections of the Oak Run Property.

100.    To date, AmGuard has failed to provide its insured with a copy of the inspection report generated by Engle Martin.

101.    To date, AmGuard has failed to provide its insured with a copy of the scope of damage estimate generated by Engle Martin.

102.    To date, AmGuard has failed to provide its insured with a copy of the photographs taken by Engle Martin during its inspections of the Oak Run Property.

103.    To date, AmGuard has failed to provide its insured with a copy of the underwriting file to illustrate the condition of the Oak Run Property prior to the storm that occurred on May 8, 2017.

104.    To date, AmGuard failed to provide its insured with a copy of the weather-related information relied upon to determine the amount of damage resulting from the storm that occurred on May 8, 2017.

105.    Oak Run retained GRK Consulting Engineers, Inc. (hereinafter "GRK"), a Colorado licensed forensic engineering firm, to engineering evaluation as to the extent of reported

damage to the exteriors and roof systems of twenty-three (23) residential buildings due to a hail and wind storm event which occurred on May 8, 2017.

106.    GRK performed site inspections of the Oak Run Property on July 2, 2018 and July 13, 2018.

107.    Unlike Rimkus Consulting and Engle Martin, GRK conducted an inspection of each of the twenty-three (23) buildings within the Oak Run Property.

108.    GRK generated a report related to its comprehensive building damage assessment. *See* **Exhibit I**, GRK Inspection Report.

109.    Consistent with the investigations performed by Dynamic and TEI, GRK identified widespread, randomly distributed, and irregular shaped hail impact damages, consistent with a hail storm event, to each of the roofing systems covering the twenty-three (23) buildings within the Oak Run Property.

110.    GRK concluded within a reasonable degree of professional engineering certainty that the May 8, 2017 storm event resulted in direct physical and functional damage to the shingled roofing systems covering the twenty-three (23) buildings within the Oak Run Property.

111.    GRK concluded within a reasonable degree of professional engineering certainty that the direct physical and functional damage to the shingled roofing systems resulting from the May 8, 2017 storm event require full roof replacement down to the decking.

112.    GRK identified randomly distributed impact damages to the exterior siding covering requiring full replacement of the damaged material.

113.    GRK identified randomly distributed impact damages to the vinyl windows within the Oak Run Property, consisting of cracked, broken, dented, and scuffed window frames and glazing.

114.    AmGuard has failed to reasonably investigate Oak Run's claim for direct physical loss of and/or damage to the Property resulting from a hail and/or wind storm occurring on or about May 8, 2017.

115.    AmGuard has ignored evidence of covered hail damage to the Property resulting from the hail and/or wind storm occurring on or about May 8, 2017.

116.    AmGuard's failure to pay the claim in full has resulted in a breach of contract.

117.    AmGuard's failure to pay the claim has resulted, and continues to result, in additional damages to the Property.

118.    AmGuard's failure to pay the claim has resulted in financial hardship to The Hills at Oak Run Homeowner Association.

119.    AmGuard's failure to pay the claim has resulted in an unreasonable delay and denial in covered benefits without a reasonable basis.

120.    It is apparent from AmGuard's conduct that AmGuard has adopted a plan or approach to delay, as much as possible, its handling and payment of the Oak Run claim.

121.    AmGuard's conduct has resulted in an avoidable harm to Oak Run.

122.    Oak Run has fulfilled all duties required of it under the Policy after discovery of the loss.

123.    Oak Run has performed all conditions precedent and subsequent required under the Policy, or alternatively, has been excused from performance by the acts, representations, and/or conduct of AmGuard.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

124.    Oak Run realleges and reaffirms Paragraphs 1-123 as if fully set forth herein.

125.     Oak Run purchased an all risk policy requiring AmGuard to pay for any and all fortuitous damages resulting from a loss not expressly excluded or otherwise limited by the Policy.

126.     The Policy between Oak Run and AmGuard is a binding contract.

127.     Oak Run paid premiums and otherwise performed all conditions precedent to recovery of benefits under its Policy with Oak Run.

128.     AmGuard has denied certain covered damages and continues to delay and deny certain claimed damages.

129.     AmGuard's failure to honor its obligations under the Policy is a breach of contract.

130.     AmGuard's breach of contract has damaged and continues to damage Oak Run.

131.     Oak Run is entitled to all benefits due and owing under the Policy.

**WHEREFORE**, Plaintiff, The Hills at Oak Run Homeowner Association, respectfully requests this Court enter judgment against, Defendant, AmGuard Insurance Company, for damages resulting from its breach of contract, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and such other relief as the Court deems appropriate.

## SECOND CLAIM FOR RELIEF
### (Bad Faith breach of Insurance Contract)

132.     Oak Run realleges and reaffirms Paragraphs 1-131 as if fully set forth herein.

133.     Under the Policy and Colorado law, AmGuard had a duty to act reasonably and in good faith in the handling of Oak Run's claim.

134.     Under the Policy and Colorado law, AmGuard had a duty to act with ordinary, reasonable diligence in investigating the claims submitted by Oak Run and in determining the amounts due and owing under the Policy in question, and to pay all amounts due and owing.

135.     Under the Policy and Colorado law, AmGuard owes Oak Run the duty of good faith and fair dealing.

136.   AmGuard had an obligation to conduct a thorough, fair, unbiased, and timely investigation of the claim presented to it, and then properly evaluate and timely pay those claims.

137.   AmGuard sold Oak Run the Policy at issue, the intent of which was to provide benefits for covered losses that occurred during the Policy period.

138.   AmGuard knew that Oak Run purchased the Policy to protect its Property in the event of a loss.

139.   Oak Run has cooperated with AmGuard in the processing of its claim for covered benefits resulting from a hail and/or wind storm occurring on or about May 8, 2017.

140.   Oak Run has cooperated with AmGuard in the investigation of its claim for covered benefits resulting from a hail and/or wind storm occurring on or about May 8, 2017.

141.   Oak Run has not erected any obstacles to AmGuard's ability to investigate Oak Run's claim for covered benefits resulting from a hail and/or wind storm occurring on or about May 8, 2017.

142.   Oak Run has not erected any obstacles to AmGuard's ability to evaluate Oak Run's claim for covered benefits resulting from a hail and/or wind storm occurring on or about May 8, 2017.

143.   AmGuard disregarded the validity of Oak Run's claim for direct physical loss and damage resulting from the hail and/or wind storm occurring on or about May 8, 2017.

144.   AmGuard failed to indemnify Oak Run to its pre-loss condition.

145.   AmGuard failed to treat Oak Run's interests with equal regard to its own.

146.   AmGuard has misrepresented the terms of the Policy.

147.   AmGuard has misrepresented the conditions of the Policy.

148.    AmGuard has misrepresented insurance policy provisions relating to coverages at issue.

149.    AmGuard has failed to act reasonably promptly upon communications with respect to Oak Run's claim arising under the Policy.

150.    AmGuard has refused to pay Oak Run's claim without conducting a reasonable investigation based upon all available information.

151.    AmGuard has not attempted in good faith to effectuate a prompt, fair, and equitable settlement of Oak Run's claim in which liability has become reasonably clear.

152.    AmGuard denied Oak Run's claim without conducting a thorough investigation in an attempt to effectuate a deceptively low settlement.

153.    AmGuard has compelled Oak Run to institute litigation to recover amounts due under its insurance policy by offering substantially less than Oak Run's amount of loss.

154.    AmGuard has mischaracterized the evidence to the benefit of itself.

155.    AmGuard has failed to be open and honest in its dealings with Oak Run.

156.    AmGuard has withheld pertinent information from Oak Run relating to its claim for direct physical loss and damage resulting from the hail and/or wind storm occurring on or about May 8, 2017.

157.    AmGuard denied Oak Run's claim by failing to objectively evaluate Oak Run's claim based on all available evidence, and not just evidence which AmGuard believes supports its position.

158.    AmGuard decision to underpay the benefits owed to Oak Run was intentional and not accidental.

159.    AmGuard failed to assist Oak Run with the presentation of its claim.

160.    AmGuard breached its duty to act reasonably and in good faith by conducting an outcome-oriented investigation of Oak Run's claim for direct physical loss and/or damages resulting from the hail and/or wind storm occurring on or about May 8, 2017.

161.    AmGuard denied Oak Run's claim without having documented a reasonable investigation based upon all information.

162.    AmGuard applied a threshold for covered damages during its investigation which does not exist within the Policy.

163.    AmGuard has ignored objective evidence of illustrating covered damages resulting from the hail and/or wind storm occurring on or about May 8, 2017.

164.    AmGuard improperly denied the entirety of Oak Run's claim based on a sampling of the Property.

165.    AmGuard has improperly withheld all of the reports or documentation it relied upon in denying its insured's claim for damages resulting from the hail and/or wind storm occurring on or about May 8, 2017.

166.    AmGuard failed to conduct a thorough and timely investigation of Oak Run's claim in accordance with insurance industry claims handling standards and practices.

167.    AmGuard's conduct demonstrated a relentless plan designed to lower the amount paid on claims.

168.    AmGuard improperly set various claims handling goals to reduce the amount paid on claims.

169.    AmGuard improperly denied Oak Run's claim to reduce overall claims payments.

170.    AmGuard improperly denied Oak Run's claim to increase profits.

171.    AmGuard improperly denied Oak Run's claim to maintain its loss ratio.

172.     AmGuard improperly denied Oak Run's claim to meet department goals.

173.     AmGuard's conduct demonstrates that it was repeatedly aimed at benefiting itself to the detriment of Oak Run.

174.     AmGuard improperly denied Oak Run's claim by motivating its claims department to pay less on claims that are otherwise owed.

175.     AmGuard improperly denied Oak Run's claim to reduce the average amount paid on overall claims.

176.     AmGuard has committed unfair claim settlement practices as alleged in the preceding paragraphs of Oak Run's Complaint.

177.     AmGuard's conduct constitutes a bad faith breach of the insurance contract.

178.     AmGuard has committed such actions with such frequency as to indicate a general business practice.

179.     AmGuard's conduct has resulted in harm to its insured, which was an avoidable harm.

180.     As a direct and proximate result of AmGuard's actions, Oak Run has:

    (a)    incurred increased costs to repair, restore and/or replace the significant property damage;
    (b)    suffered damages as a proximate result of the misconduct alleged; and
    (c)    suffered and will continue to suffer other expenses, including loss of pre-judgment interest, attorneys' fees, public adjuster costs and fees, investigatory fees, and other losses.

**WHEREFORE** Plaintiff, The Hills at Oak Run Homeowner Association, respectfully requests this Court enter judgment against Defendant, AmGuard Insurance Company, for damages resulting from bad faith breach of insurance contract, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and such other relief as the Court deems appropriate.

## THIRD CLAIM FOR RELIEF
### (Unreasonable Delay and Denial of Payment of Covered Benefits Pursuant to C.R.S. §§ 10-3-1115 and 10-3-1116)

181.    Oak Run re-alleges and reaffirms Paragraphs 1-180 as though fully set forth herein.

182.    Under Colorado Revised Statute § 10-3-1115, an insurer who delays or denies payment to an insured without a reasonable basis for its delay or denial is in breach of the duty of good faith and fair dealing.

183.    Under Colorado Revised Statute § 10-3-1115, an insurer's delay or denial is unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action.

184.    Oak Run is a first-party claimant within the meaning of Colorado Revised Statute § 10-3-1115(1)(b)(1).

185.    Oak Run suffered a loss covered by the Policy and promptly submitted a claim for that loss to AmGuard.

186.    The claimed loss and damage submitted by Oak Run was covered by the Policy and Oak Run was owed covered benefits under the Policy.

187.    AmGuard delayed payment of covered benefits without a reasonable basis for its actions.

188.    AmGuard denied payment of covered benefits without a reasonable basis for its actions.

189.    Among other circumstances, AmGuard has unreasonably delayed and denied covered benefits without a reasonable basis for doing so as alleged in the preceding paragraphs of Oak Run's Complaint.

190.    AmGuard has unreasonably delayed and denied covered benefits without a reasonable basis for doing so by misrepresenting provisions of the Policy relating to coverages at issue.

191.    AmGuard has unreasonably delayed and denied covered benefits without a reasonable basis for doing so by misrepresenting terms of the Policy.

192.    AmGuard has unreasonably delayed and denied covered benefits without a reasonable basis for doing so by failing to act reasonably promptly upon communication with respect to Oak Run's claim arising under the Policy.

193.    AmGuard has unreasonably delayed and denied covered benefits without a reasonable basis for doing so by failing to conduct a fair investigation of Oak Run's claim for damages resulting from the hail and/or wind storm that occurred on or about May 8, 2017.

194.    AmGuard has unreasonably delayed and denied covered benefits without a reasonable basis for doing so by paying less on Oak Run's claim that what is otherwise owed.

195.    AmGuard has unreasonably delayed and denied covered benefits without a reasonable basis for doing so by failing to pay for covered damages resulting from the hail and/or wind storm that occurred on or about May 8, 2017.

196.    AmGuard has unreasonably delayed and denied covered benefits without a reasonable basis for doing so by failing to instruct its consultants to inspect the entirety of the Oak Run Property for direct physical loss and/or damage resulting from the storm that occurred on or about May 8, 2017.

197.    AmGuard has unreasonably delayed and denied covered benefits without a reasonable basis for doing so by failing to instruct its consultant to inspect the Property for cosmetic damage resulting from the storm that occurred on or about May 8, 2017.

198.    AmGuard has unreasonably delayed and denied covered benefits without a reasonable basis for doing so by conducting an investigation utilizing a threshold for damages that does not exist within the Policy.

199.    AmGuard has unreasonably delayed and denied covered benefits without a reasonable basis for doing so by denying damage to eighteen buildings within the Oak Run Property without conducting an inspection of those eighteen buildings.

200.    AmGuard has unreasonably delayed and denied covered benefits without a reasonable basis for doing so by ignoring photographs provided by TEI illustrating direct physical loss of and/or damage to each of the twenty-three (23) roofing systems covering the Property.

201.    AmGuard has unreasonably delayed and denied covered benefits without a reasonable basis for doing so by failing to provide its insured with a copy of the inspection reports being relied upon by AmGuard in the adjustment of Oak Run's claim.

202.    AmGuard has unreasonably delayed and denied covered benefits without a reasonable basis by failing to promptly investigate its insured's loss.

203.    AmGuard has unreasonably delayed and denied covered benefits without a reasonable basis by unnecessarily prolonging its investigation of Oak Run's claim.

204.    AmGuard delayed and denied payment of covered benefits without a reasonable basis for its action by providing Oak Run with an inadequate settlement offer.

205.    AmGuard delayed and denied payment of covered benefits without a reasonable basis for its action by omitting obvious covered damages in an effort to effectuate a deceptively low settlement.

206.    AmGuard delayed and denied payment of covered benefits without a reasonable basis for its action by failing to indemnify Oak Run to a pre-loss condition.

207.    AmGuard unreasonably denied and delayed payment of covered benefits without a reasonable basis for its action by forcing Oak Run to retain its own professionals to help properly adjust the loss.

208.    Despite receipt of Oak Run's comprehensive estimate, AmGuard denied and delayed payment of covered benefits without a reasonable basis for doing so.

209.    AmGuard unreasonably delayed and denied Oak Run's claim to reduce overall claims payments.

210.    AmGuard unreasonably delayed and denied Oak Run's claim to increase profits.

211.    AmGuard unreasonably delayed and denied Oak Run's claim to maintain its loss ratio.

212.    AmGuard unreasonably delayed and denied Oak Run's claim to meet department goals.

213.    AmGuard unreasonably delayed and denied Oak Run's claim to reduce the average amount paid on overall claims.

214.    AmGuard unreasonably delayed and denied Oak Run's claim by asserting coverage positions that it knew were without merit.

215.    AmGuard has unreasonably delayed and denied covered benefits without a reasonable basis for doing so by compelling Oak Run to institute litigation to obtain benefits it is entitled to under the policy for damages resulting from the hail and/or wind storm that occurred on or about May 8, 2017.

216.    Based upon the foregoing Paragraphs is therefore entitled to two times the covered benefit, attorneys' fees, and costs pursuant to C.R.S. § 10-3-1116, together with pre-judgment interest at the highest rate allowed by law.

**WHEREFORE** Plaintiff, The Oak Run Homeowner Association, respectfully requests this Court enter judgment against Defendant, AmGuard Insurance Company, for damages authorized pursuant to Colorado Revised Statute § 10-3-1116, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and other such relief as the Court deems appropriate.

## REQUEST FOR JURY TRIAL

217.    Oak Run requests trial by jury with respect to all claims and issues triable to a jury.

Respectfully submitted this 31st day of August, 2018

/s/ Jonathan E. Bukowski
Jonathan E. Bukowski, Esq.
Larry E. Bache, Jr., Esq.
Timothy G. Burchard, II
Merlin Law Group, PA
1001 17th Street, Ste. 1150
Denver, CO 80202
Telephone:  720-665-9680
Facsimile:   720-665-9681
E-Mail:      jbukowski@merlinlawgroup.com
E-Mail:      lbache@merlinlawgroup.com
E-Mail:      tburchard@merlinlawgroup.com